```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION
```

UNITED STATES OF AMERICA        §
                                §
VS.                             §   CASE NO. 4-06-CV-618-Y
                                §
DAVID and VICTORIA SIMCHO,      §
ET AL.                          §

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This is an action brought by the United States against defendants David and Victoria Simcho ("the Simchos") to collect outstanding tax liabilities, penalties, and interest for tax years 1986 through 1995. The Simchos received notices of deficiency from the Internal Revenue Service ("IRS") for each of the tax years mentioned above that informed the Simchos that the IRS has determined that a deficiency exists and informed them of the amount of the deficiency. The government seeks to have the Simchos' tax liabilities reduced to a judgment and seeks to foreclose on its federal tax liens against their real property to satisfy their delinquent income-tax liabilities.

The government has filed a motion (doc. #35) for summary judgment arguing that there is no genuine issue of material fact as to the Simchos' tax liabilities. The government also seeks a determination of the priority of its tax lien against other lien holders on the Simchos' real property. After review, the Court concludes that the motion should be GRANTED.

I. Factual Background

The Simchos are a husband and wife who have a long history of failing to file proper income-tax returns. David Simcho failed to file income-tax returns for years 1986 through 1994, and as a result, the IRS prepared substitute returns under 26 U.S.C. § 6020(b). The Simchos filed a joint return for 1995, but showed a balance owed that they never paid. As a result, the Simchos have accrued, as of June 2006, a tax deficiency totaling $542,760.36, which includes income taxes owed for years 1986 through 1995 and assessed penalties, interest, and other statutory add-ons.[1]

The IRS subsequently sent the Simchos notice of the deficiency and demand of payment for tax years 1986 through 1994 under 26 U.S.C. § 6212. Since the Simchos filed an income-tax return in 1995, a notice of deficiency was not required. Despite the notices and demand for payment, the Simchos have failed to pay their federal income-tax liabilities.

The Simchos own a residence located in Southlake, Tarrant County, Texas. The Simchos purchased their residence in July 2004 with a loan provided by Novastar Mortgage, Incorporated ("Novastar Mortgage"). As part of the loan agreement, the Simchos executed a deed of trust with Novastar Mortgage securing $225,000 with their residence. Novastar Mortgage filed and

---

[1] The government only seeks judgment against Victoria Simcho for taxes owed for the 1995 tax year, the year she filed a joint return with her husband.

perfected its lien on the Simchos' residence on August 2, 2004.

The government filed two notices of federal tax lien in the property records of Tarrant County in February 2005. In March 2005, after the federal tax liens were recorded in the property tax records of Tarrant County, the Simchos refinanced their Novastar mortgage. The Simchos entered into a deed of trust with Option One Mortgage Corporation ("Option One") securing $318,500 with their residence. Option One paid Novastar $230,950 in satisfaction of its mortgage and the Simchos received $64,776.78 as a "cash out" from Option One. Option One recorded its lien interest, and in May 2005, Novastar executed a release of lien. The release was filed in June 2005.

In May 2006, the Simchos refinanced again. They entered into a deed of trust with Dallas Home Loans, Incorporated ("Dallas Home"), securing $373,000 with their residence. The deed of trust was recorded in June 2006. The refinancing paid Option One $318,435 in satisfaction of its deed of trust and Tarrant County $15,565 in satisfaction of outstanding property taxes. The Simchos received a cash out of $25,508.60, and Option One executed and filed a release of lien in June 2006. Dallas Home Loans then turned around and assigned the note back to Option One in consideration of payment of $373,000.

II.   Analysis

   A. Summary-Judgment Standard

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c).  An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham."  *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)). Facts are considered "material" if they "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material.  *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990).  Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party.  *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.  *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir.

4

1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may submit evidence that negates a material element of the plaintiff's claim or show that there is no evidence to support an essential element of the plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 322-24; *Crescent Towing and Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994); *Lavespere*, 910 F.2d at 178.

To negate a material element of the plaintiff's claim, the defendant must negate an element that would affect the outcome of the action. *See Anderson*, 477 U.S. at 247. If the defendant

moves for summary judgment alleging no evidence to support an essential element of the plaintiff's claim, the defendant need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the defendant need only show that the plaintiff, who bears the burden of proof, has adduced no evidence to support an essential element of his case. *See Celotex*, 477 U.S. at 325; *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988).

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

B. Discussion

1. The Simchos

The government has presented evidence that the Simchos owe

federal income taxes for tax years 1986 through 1995. The Simchos have not presented any evidence that raises a genuine issue of material fact as to their tax liabilities. Instead, the Simchos present three arguments in opposition to the government's motion for summary-judgment.

First, the Simchos argue that a stay of this litigation is appropriate until the resolution of David Simcho's criminal case in San Francisco, California, for filing false personal income-tax returns for tax years 1999 through 2002. A district court has the authority to stay a civil proceeding during the pendency of a parallel criminal proceeding. "Such a stay contemplates special circumstances and the need to avoid substantial and irreparable prejudice." *United States v. Little Al,* 712 F.2d 133, 136 (5th Cir. 1983). In contemplating whether a stay is appropriate, other district courts

> have outlined several factors that should be considered in determining whether "special circumstances" warrant a stay, including: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Heller Healthcare Fin., Inc. v. Boyes,* No. 3:00-CV-1335-D, 2002

7

U.S. Dist. LEXIS 12743, *5-6 (N.D.Tex. Jul. 15, 2002)(Fitzwater, J.)(numerous citations omitted). Applying those factors here, the Court agrees with the government that a stay is not appropriate.

The Simchos have failed to show any overlap between their civil action and David Simcho's criminal case. This civil action is concerned with tax years 1986 through 1995 and David Simcho's criminal action is concerned with tax years 1999 through 2002. Further, the allegations in this civil action are that the Simchos failed to file any returns for tax years 1986 through 1994, and for 1995, the Simchos filed a return, but failed to pay their taxes. The allegations in David Simcho's criminal case are that he filed false personal income-tax returns for tax years 1999 through 2002. And the government has admitted that any evidence "[David] Simcho provides in this action related to the 1986-1995 tax years should have no bearing on whether he filed fraudulent returns in 1999-2002." (Pl.'s Reply at 2.)

Moreover, the Court concludes that the interests of the government, the Court, and the public outweigh any private interests of and any prejudice to, which the finds to be negligible, the Simchos. The public has a substantial interest in its government collecting on unpaid tax liabilities. In this case, those liabilities are more than ten years old and, in

8

principal, more than $200,000.[2]  Further, courts have recognized that "a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with the judicial administration."  *Mendelsohn v. Gordon (In re Who's Who Worldwide Registry),* 197 B.R. 193, 197 (E.D.N.Y. 1996).  And the government has established it has a substantial interest in seeking judgment against the Simchos for unpaid tax liabilities and foreclosure of their residence.  The evidence shows that the Simchos have been continually refinancing their home and draining any equity from it.  A stay would only permit the Simchos from continuing to sap any equity from their home, and could give the Simchos an opportunity to stop paying on their mortgage note, fail to pay property taxes, and fail to provide upkeep and maintenance on the home or otherwise preserve its value.  Additionally, the Simchos' tax liabilities continue to increase as interest and statutory penalties accrue making it less likely that the proceeds from the sale of their residence will adequately cover their tax liabilities.

Next, the Simchos argue that summary judgment is not appropriate because they have not had access to discovery from the government.  The Simchos claim that they have "not had access

---

[2] Its over a half a million dollars when interest, penalties, and other statutory add-ons are included.

to . . . personal or financial records due to [a] previous execution of a search warrant by the IRS and the failure to return, or provide copies of, those relevant documents." (Simchos' Resp. at 6.) The Simchos claim that the government had promised to "produce the administrative file . . . but has apparently not done so." (*Id.*)

Although the Simchos argue that summary judgment is not appropriate until they have had an opportunity for discovery, the Simchos fail to articulate any specific facts they believe will be uncovered from discovery that will place their tax liability into question. "Rule 56 does not require that discovery take place before granting summary judgment. To be entitled to discovery the party must demonstrate how the additional time will enable him to rebut the movant's allegations of no genuine issue of material fact. It is not sufficient to allege that discovery is incomplete or that it will produce needed but unspecified facts." *McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir. 1991)(internal quotations and citations omitted).

Moreover, the government states that it informed the Simchos that the IRS administrative files for this case were available for review at the office for government counsel. As for the files seized by the government, it contends that it only seized documents dated after January 1, 1993. Of the documents seized, thirteen pages were found to be related to this litigation, and

the government provided those documents to the Simchos in July 2007. The Simchos were also permitted to make copies of or scan any documents seized from the search warrant.

Finally, the Simchos argue that the government has failed to prove that it sent the required notices of deficiency to the Simchos. The government has submitted evidence establishing that there is no genuine issue of material fact that it sent the Simchos the required noticed under the internal revenue code. "Section 6212 does not require the IRS to prove that [the Simchos] received the notice, only that it was mailed to [their] last known addresses." *McCarty v. United States*, 929 F.2d at 1089.

The government's summary-judgment evidence establishes that the Simchos failed to file income-tax returns for years 1986 through 1994 and failed to pay taxes owed for 1995. The government has submitted "Certificates of Assessments and Payments" for each taxable year showing that the Simchos have been assessed with tax liabilities, have received notice, and have been demanded payment. "These forms are admissible under the Federal Rules of Evidence." *Id.* at 1089. Moreover, the notices sent to the Simchos informed them of their right to contest the assessments of the IRS in the United States Tax Court. *See* 28 U.S.C. §§ 6212 and 6213. The Simchos had ninety days to file their petition with the tax court. *See* 28 U.S.C. §

11

6213(a). The Simchos have presented no evidence that they ever petitioned the tax court seeking to contest the assessment of the IRS. "If the taxpayer does not file a petition in the tax court, the IRS makes an assessment, . . . and sends a notice of demand and payment to the taxpayer . . . . If the taxpayer fails to pay, the IRS may file a lien against the taxpayer's property." *McCarty,* 929 F.2d at 1089. Accordingly, the government is entitled to summary judgment in its favor on the Simchos' tax liability for tax years 1986 through 1995.

2. Priority of the Government's Tax Lien

As mentioned above, the government perfected its lien notices when it filed its two notices on February 14, 2005, in the real property records for Tarrant County, Texas, which is where the Simchos' real property is located. The parties agree that the Simchos had purchased their residence on July 26, 2004, with a loan provided by Novastar Mortgage. The parties agree that Novastar filed and perfected its lien interest in the Simchos' residence when the Simchos granted Novastar Mortgage a deed of trust in the amount of $225,000, and Novastar filed that deed of trust in the Tarrant County real property records on August 2, 2004. And the parties agree that through the doctrine of equitable subrogation, Option One contains a priority interest in the Simchos' residence to the tune of $230,950 plus interest at

12

six percent from the payment date. (Pl.'s Mot. at 8-10.)(One Option Resp. at 8-9.)(Pl.'s Reply at 7.); *Dietrich Industries, Inc. v. United States,* 988 F.2d 568, 573, n.4 (5th Cir. 1993); *Vogel v. Glickman,* 117 F.Supp.2d 572, 580 (W.D.Tex. 2000).

The dispute between the government and Option One is on priority after the original Novastar mortgage. Option One argues that it has a priority because the government failed to properly file its lien notices under Texas law, and therefore, it cannot be charged with constructive knowledge. The Court disagrees.

Federal law governs the filing requirements, form, and content of IRS tax-lien notices. *See United States v. Union Central Life Ins. Co.,* 368 U.S. 291, 294 (1961). The Internal Revenue Code provides, "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Section 6323 governs the requirements for the filing of a tax lien. The tax lien under section 6321 does not become valid against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a).

Section 6323(f) provides that the form and content of a notice of federal tax lien shall be prescribed by the Secretary of the

Treasury and such notice "shall be valid notwithstanding any other provision of law" to the contrary. 26 U.S.C. § 6323(f)(3). In the case of real property, the notice is required to be filed "in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which property subject to the lien is situated." 26 U.S.C. § 6323(f)(1)(A)(i). Real property is situated at its physical location. 26 U.S.C. § 6323(f)(2)(A).

The controversy between the government and One Option centers around section 6323(f)(4). It provides,

> Indexing required with respect to certain real property. In the case of real property, if——
>
> (A) under the laws of the State in which the real property is located, **a deed** is not valid as against a purchaser of the property who (at the time of purchase) does not have actual notice or knowledge of the existence **of such deed** unless the fact of filing **of such deed** has been entered and recorded in a public index at the place of filing in such a manner that a reasonable inspection of the index will reveal the existence **of the deed**, and
>
> (B) there is maintained . . . an adequate system for the public indexing of Federal tax liens,
>
> then the notice of lien referred to in subsection (a) shall not be treated as meeting the filing requirements . . . unless the fact of filing is entered and recorded in the index . . . in such a manner that a reasonable inspection of the index will reveal the existence of the lien.

14

26 U.S.C. § 6323(f)(4)(emphasis added). Option One argues that before it can be charged with constructive notice of the IRS's tax lien, it must be properly and correctly indexed. Option One contends that when it was filed, it was not properly indexed because the filing officer reversed the parties as grantor and grantee. Option One points out that under the index, the Simchos are listed as the "Grantees" and the IRS is listed as "Grantor." Because it was not properly indexed, Option One argues that it cannot be charged with constructive notice of the tax lien and it should have priority.

Option One's argument is fatally flawed because Texas law does not require that a deed be indexed. Indeed, it has been well settled in Texas for quite some time that "the filing of a deed with the county clerk charges the purchaser with notice of the existence of the deed, notwithstanding the clerk's failure to record the deed." *Hanafy v. United States,* 991 F. Supp. 794, 798 (N.D.Tex. 1998)(citing *Throckmorton v. Price,* 28 Tex. 605 (Tex. 1866)). The Court in Hanafy, after conducting a thorough search of Texas law, concluded that "the position that indexing validates a deed or other instrument against a purchaser without notice finds no support in Texas case law." *Id.* Because Texas law does not require deeds to be indexed, "section 6323(f)(4) does not apply to this case." *Hanafy,* 991 F. Supp. at 800 (rejecting nearly identical argument).

Nevertheless, Option One relies on section 14.001 and section 14.004 of the Texas Property Code (the Uniform Federal Lien Registration Act) in support of its argument that a federal tax lien must be properly and correctly indexed before a *bona fide* purchaser will be charged with its constructive knowledge. Section 14.001(b) provides that tax-lien notices "must be filed in accordance with this chapter." Subsection (b) requires tax liens on real property to be filed in the office of the county clerk in the county in which the real property is situated. Section 14.004, which it titled *Duties of Filing Officer*, provides:

> (a) If a notice of federal lien . . . is presented to a filing officer who is:
>
> . . .
>
> (2) any other officer described in section 14.002, he shall endorse thereon his identification and the date and time of receipt and forthwith file it alphabetically in the real property records and **if requested by the party submitting the document,** . . . enter it in an alphabetical index for real or personal property . . . .

TEX. PROP. CODE § 14.004 (emphasis added).

As mentioned above, section 14.004 is titled *Duties of Filing Officer* and, as its title indicates, it describes a filing officer's duties once presented with a federal notice of tax lien. The statute explicitly provides that the duty to record and index the federal tax lien rests with the clerk and not the

16

federal government or the person filing the lien.  Of particular interest, section 14.002 only places the burden on the government to file the tax lien in the office of the county clerk in the county where the real property is located.  Beyond that, the Texas Property Code does not provide any further requirements on the government.  Thus, the Court agrees with the Court in Hanafy, the IRS's two tax-lien notices "became valid . . upon the IRS's filing of the" notices.  991 F. Supp. at 800.

Moreover, the express wording of the Texas statute again operates to put the wooden stake through the heart of Option One's argument.  Even assuming that the "duties of the filing officer" are also the duties of the person or entity filing the tax lien, the statute explicitly provides the filing need only be endorsed by the filing officer, date and time stamped, and filed alphabetically in the real property records.  Tex. Prop. Code § 14.004(a)(2).  Only "if requested by the party submitting the document," does a notice of federal tax lien need to be entered into an alphabetical index.  *Id.*  There is no evidence that the IRS made any such request.

Finally, Option One's own actions establish that the IRS's tax-lien notices were filed and indexed "in such a manner that a reasonable inspection of the index [would] reveal the existence of the lien."  26 U.S.C. § 6323(f)(4).  Option One admits that once it searched the Tarrant County records in reverse, the IRS's

17

lien notices appeared.  The Court agrees with the government that Option One is a sophisticated mortgage company that is either familiar with searching titles for previous encumbrances or employing a title-search company to search the title of a property and ensure it does not contain any liens or encumbrances superior to the interest it seeks to perfect.  Thus, even if the county clerk incorrectly indexed the IRS's tax-lien notices such that it was listed under the Simchos as "Grantees" instead of as "Grantors," the Court agrees that "minimum due diligence would require a lender and the title company to check both the grantor and grantee index[es] to ensure that there are no liens or judgments on file."  (Pl.'s Sur-Sur-Reply at 7.).

It is undisputed that a simple search of the both the grantor and the grantee indexes in the Tarrant County records would have turned up the tax-lien notices.  Requiring that sophisticated mortgage and title companies conduct a simple search of both the grantor and grantee indexes is not unreasonable.  Therefore, the Court concludes that even if section 6323(f)(4) applies, the tax-lien notices were indexed in such a manner that a reasonable inspection of the index would have revealed its existence.[3]

---

[3] The Court concludes that Option One's remaining arguments, including the argument that the officer who signed the tax-lien notices did so without authority, are without merit for the reasons stated by the government in its briefs and warrant no further discussion.

III. Conclusion

For the reasons stated above, the government is entitled to summary judgment. The Court concludes that the government is entitled to have its tax assessments against David and Victoria Simcho reduced to judgment. The Court further concludes that the government possesses valid federal tax liens against the Simchos' residence, that it is entitled to foreclose on the Simchos' residence, and that it is entitled to a priority interest in the proceeds of the sale of the Simchos' residence to the extent that they are greater than $230,950 plus interest at six percent from the payment date. Under the equitable subrogation doctrine, Option One retains a priority interest in the amount of $230,950 plus interest at six percent from the payment date.

SIGNED March 31, 2008.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE